.2IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | |
|---|---|
| ROYAL RIDGE LANE CONDOMINIUM ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant, | ) CASE NO. 1:20-CV-01439-CEH <br> ) <br> ) <br> ) MAGISTRATE JUDGE <br> ) CARMEN E. HENDERSON <br> ) <br> ) <br> ) **MEMORANDUM OPINION AND** <br> ) **ORDER** <br> ) |

**I.     Introduction**

This matter is before the Court on Defendant State Farm Fire and Casualty Company's ("State Farm") Motion for partial summary judgment. (ECF No. 47). For the following reasons, the Court GRANTS State Farm's motion and dismisses Royal Ridge Lane Condominium Association's ("Royal Ridge") claims for attorney's fees and lack of good faith. As this motion did not involve Royal Ridge's claim for breach of contract, this case is not dismissed in its entirety.

**II.    Background**

Royal Ridge owns twenty-three buildings consisting of sixty-five units. (ECF No. 1-1 at 2). Royal Ridge had a Residential Community Association Policy in effect with State Farm, an insurance company. (ECF No. 1-3 at 2). On May 22, 2018, Royal Ridge's buildings sustained damage from a hail and windstorm. (ECF No. 60 at 5). Royal Ridge's property manager

recommended that Royal Ridge involve Feazel Roofing. (ECF No. 59-3 at 2–3). Feazel inspected the buildings and found significant damage (ECF No. 60 at 5).

On July 23, 2018, Royal Ridge submitted a claim to State Farm to replace all of its roofs. (ECF No. 54-1 at 29). At that time, Michael St. John, an adjuster, was assigned to the claim. (ECF No. 54-1 at 28–29). On August 8, 2018, Mr. St. John performed an initial inspection of some of the buildings and found damage. (ECF No. 54-1 at 30, 32). State Farm hired an engineer, Wesley Gerbick, to inspect the roofs for hail damage. (ECF No. 54-1 at 52). State Farm instructed Mr. Gerbick to inspect three roofs at the property and Mr. Gerbick found damage on all three. (ECF No. 54-1 at 52, 54–55). He observed "hail-caused blemishes," shingles displaced by wind, and "aged and recent hail-caused indentions" to soft metals on various roofs. (ECF No. 47-2 at 2). Mr. Gerbick opined that the roofs were repairable because the shingles were pliable and easily manipulated without tools. (ECF No. 47-2 at 2). He also noted that there were prior repairs to several roofs, confirming the repairability of the shingles. (ECF No. 47-2 at 2).

From October 30, 2018 through December 3, 2018, Mr. St. John performed additional inspections. (ECF No. 54-1 at 80). He found damage to metals and the siding on every building and damage to shingles on certain buildings. (ECF No. 54-1 at 74–75, 79, 82). On January 24, 2019, Mr. St. John wrote an estimate of $646,273.18 to replace the three roofs inspected by Mr. Gerbick and the siding on all of the buildings.[1] (ECF No. 54-1 at 87–88, 106). On March 28, 2019—ten months after the storm—State Farm notified Royal Ridge of its assessment and made its first payment to Royal Ridge. (ECF No. 54-1 at 673). State Farm made its second payment on September 17, 2019. (ECF No. 47-1 at 12).

---

[1] It is not clear why State Farm decided to replace the roofs when Mr. Gerbick opined that they could be repaired. (ECF No. 57-1 at 25).

2

In June 2019, Mr. St. John returned to Royal Ridge—on Royal Ridge's request—for further inspection and determined additional damage. (ECF No. 54-1 at 108–109). By July 2019, Mr. St. John revised his estimate, allowing Royal Ridge to replace additional damaged shingles. (ECF No. 54-1 at 115–16). However, he did not determine whether there was a matching shingle—a shingle with a comparable appearance—that would actually allow Royal Ridge to replace the shingles. (ECF No. 54-1 at 92–93). In August 2019, Royal Ridge's President informed Mr. St. John that he did not believe a comparable shingle could be found. (ECF No. 54-1 at 130–31). In February 2020, Mr. St. John's assignment ended, and State Farm had not yet determined whether there was a matching shingle. (ECF No. 54-1 at 135–36). At that point, Royal Ridge involved a law firm. (ECF No. 57-1 at 22).

Thereafter, a new adjuster, Alice Sandvick began to handle the claim. (ECF No. 57-1 at 21–22). Ms. Sandvick hired an engineer to complete another inspection of the property. (ECF No. 57-1 at 29–30). Then, Mr. Gerbick went back to the property and found additional damage. (ECF No. 47-4 at 3). In May 2020, State Farm again revised the estimate—now totaling $657,956.60—to reflect Mr. Gerbick's new findings, and paid Royal Ridge $6,603.74. (ECF No. 57-1 at 61, 65). State Farm also began attempting to find a matching shingle. (ECF No. 47-4 at 5). In June 2020, State Farm determined there was a reasonably comparable shingle that could be used to replace Royal Ridge's shingles. (ECF No. 57-1 at 63).[2] In total, State Farm has paid $617,691.93 for new siding on all twenty-three buildings, the replacement of three roofs, and the cost of repairs to certain roofs. However, Royal Ridge asserts that State Farm should replace all of its roofs. State Farm disagrees.

---

[2] The Court notes that there is a dispute as to whether or not the shingle is actually a match.

3

As a result of this dispute, on May 20, 2020, Royal Ridge filed this action in the Cuyahoga County Court of Common Pleas. (ECF No. 1-1 at 1). State Farm removed the action to this Court on June 30, 2020. (ECF No. 1). On May 6, 2022, State farm moved for partial summary judgment. (ECF No. 47). The Court approved two joint motions for extensions of time to respond and reply. (ECF No. 50, 52). Royal Ridge timely responded. (ECF No. 58). Royal Ridge timely replied. (ECF No. 60).

### III.  Standard of Review

To be entitled to summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-movant to establish a "genuine issue" for trial via "specific facts." *Id.* at 324. The Court is required to enter summary judgment against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all facts in the light most favorable to the non-moving party. *Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252. Importantly, the Court may not "weigh the evidence and determine the truth of the matter." *Id.* at 249.

### IV.  Discussion

### A. Attorney's Fees

As part of its breach of contract claim, Royal Ridge demanded attorney's fees. State Farm asserts that Ohio law does not permit recovery of attorney's fees on a breach of contract claim. State Farm, therefore, argues that Royal Ridge cannot recover attorney's fees on its breach of contract claim. In its response, Royal Ridge conceded this point. Thus, the Court concludes summary judgment is appropriate as to Royal Ridge's demand for attorney's fees under its breach of contract claim.

### B. Lack of Good Faith

In Ohio, "an insurer owes a duty of good faith to its insured in the processing, payment, satisfaction, and settlement of the insured's claims." *Tokles & Son v. Midwestern*, 605 N.E.2d 936, 942 (Ohio 1992) (citations omitted). The duty of good faith extends to a situation in which an insurer delays payment of a claim without justification. *See Drouard v. United Servs. Auto. Assn.*, No. L-06-1275, 2007 WL 707532, at *2 (Ohio Ct. App. Mar. 9, 2007) ("[E]ven in cases where a claim is ultimately paid, 'the insurer's foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action.'" (citations omitted)). Ohio courts apply a "reasonable justification" standard in determining whether an insurance company breached this duty and denied an insurance benefit or delayed payment in bad faith. *Zoppo v. Homestead Ins. Co*, 644 N.E.2d 397, 399–400 (Ohio 1994). The crucial inquiry under this standard is whether there was a "reasonable justification in law or fact for refusing to satisfy the claim." *Tokles*, 605 N.E.2d at 943 (citations omitted). The decision cannot be arbitrary and capricious and "must be based on circumstances that furnish reasonable justification therefor." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983) (citations omitted). Thus, to grant an insurer's motion for summary judgment on this claim, "a court must find after viewing the evidence in a light most favorable to

5

the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles*, 605 N.E.2d at 943. To withstand a motion for summary judgment, the insured must oppose the motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." *Id.*

As an initial matter, the Court notes that an understanding of the background is necessary before discussing the arguments. At the heart of the dispute is whether or not Royal Ridge's roofs needed to be replaced or could simply be repaired—as State Farm ultimately concluded. Both parties agree that there are two ways to require replacement of a roof. A roof can require replacement by sustaining a significant amount of hail damage. A roof can also require replacement if repairing the roof requires the placement of new shingles and there is not a shingle that has a "reasonably comparable appearance." (ECF No. 56-1, PageID #: 959). This second instance is based on the Ohio Administrative Code.[3] Although Royal Ridge asserts that both instances apply, most of the disagreement has surrounded the second instance. Of course, State Farm asserts that neither instance applies and denied Royal Ridge's claim, replacing three roofs and repairing the rest. Royal Ridge then brought this claim alleging that State Farm made this decision in bad faith. State Farm argues that it is entitled to summary judgment on Royal Ridge's lack of good faith claim because State Farm had a reasonable justification for its belief that Royal Ridge's roofs were repairable. Royal Ridge asserts that State Farm is not entitled to summary

---

[3] Ohio Adm. Code 3901-1-54(I)(1)(b) states: "When an interior or exterior loss requires replacement of an item and the replaced items does not match the quality, color or size of the item suffering loss, the insurer shall replace as much to the item as to result in a reasonably comparable appearance."

6

judgment because State Farm "did not act with reasonable justification in 1) delaying payment on the claim, 2) its inadequate investigation of the loss and, 3) its failure to pay part of Royal Ridge's damages." (ECF No. 58 at 7). The Court will consider each of Royal Ridge's arguments.

### 1. State Farm Had a Reasonable Justification for the Length of its Investigation

Royal Ridge's first two arguments are intertwined. Royal Ridge asserts the following: State Farm took ten months from the date of the claim to make its initial payment. During this time, State Farm did not inspect every roof slope at the property. Then, State Farm took another ten months to send an engineer to inspect all twenty-three roofs at the property and make additional payments on the claim. At each inspection, State Farm found more damage. Royal Ridge suggests that State Farm has not explained why it could not conclude its investigation or make payment any sooner. State Farm suggests that this timeline was reasonable and Royal Ridge has not "presented any evidence or testimony that that the length of the investigation was unreasonable." (ECF No. 59 at 9). State Farm also states that Royal Ridge "has also offered no legal support for its argument. As such, there is no evidence in the record that State Farm acted in bad faith in its timeliness in completing its investigation of [Royal Ridge's] claim." (ECF No. 59 at 9).

The Court will first consider whether the length of time indicates a lack of good faith. The Court agrees that Royal Ridge failed to demonstrate that State Farm delayed payment without reasonable justification, or that the delay was based on an arbitrary or capricious belief. As for the first ten months, Royal Ridge has not presented any evidence that ten months is an unreasonable amount of time to investigate a claim. The evidence demonstrates that State Farm quickly investigated the property, hired an engineer, and wrote up an estimate. The only real delay was the two months between the finalization of the estimate and the approval of the estimate. Mr. St. John

7

explained that this delay was due to workload. There is no evidence that this is false or that Mr. St. John did this in bad faith. Thus, nothing about the first ten month indicates a lack of good faith.

Additionally, at this point, State Farm had determined that they would not be replacing all of Royal Ridge's roofs because the damage was not severe enough. State Farm asserts that this was a reasonable decision based on the opinion of the engineer it hired, Wesley Gerbick. Mr. Gerbick opined, "to a reasonable degree of engineering probability," that the shingles were repairable. (ECF No. 47 at 9). Mr. Gerbick relied on the fact that the shingles were pliable and easily manipulated and that some of Royal Ridge's roofs had been repaired before.

Then, after the first payment, according to Mr. St. John's deposition testimony that Royal Ridge provided, the parties were no longer discussing replacing the roofs and were focused on replacing the siding. (ECF No. 54-1 at 107). In June 2019, Royal Ridge requested that State Farm return to the property to determine if there was any damage to certain metals on seven of its roofs. (ECF No. 54-1 at 108). The understanding was that Royal Ridge wanted to replace certain metal on its roofs because it would require the removal and replacement of certain shingles. (ECF No. 54-1 at 108). Royal Ridge hoped that the replacement of shingles would lead to a replacement of the roof because there would not be a reasonably comparable shingle to replace it with. (ECF No. 54-1 at 108). On this understanding, Mr. St. John returned to Royal Ridge and found additional damage to metal on six of the seven roofs Royal Ridge requested him to inspect. (ECF No. 54-1 at 108). In July 2019, Mr. St. John revised his estimate. The Court has little information as to what occurred between July 2019 and February 2020. A review of the deposition transcripts suggests that State Farm paid the claim and nothing else occurred until December 2019. (ECF No. 54-1 at 132). At that point, Royal Ridge involved a law firm, State Farm sent an engineer to complete another inspection of the property, and again revised Royal Ridge's estimate.

The Court concludes that this timeline does not demonstrate any bad faith or a lack of good faith. As stated above, to prevail on this claim, Royal Ridge must demonstrate that State Farm delayed payment without reasonable justification, or the delay was based on an arbitrary or capricious belief. The evidence indicates that State Farm had a reasonable justification to deny Royal Ridge's request to replace all of their roofs, gave an estimate, and then continuously worked with Royal Ridge, returning to the property multiple times, to find other ways to justify replacing the roofs. Royal Ridge has provided plenty of evidence of State Farm's timeline in paying and adjusting its claim. However, Royal Ridge has failed to present any evidence showing State Farm's lack of good faith in this delay. This failure is detrimental to Royal Ridge's claim. *See Price v. Dillon*, Nos. 07-MA-75, 07-MA-76, 2008 WL 698944, at *5 (Ohio Ct. App. Mar. 13, 2008) ("A seven-month delay in paying an insurance claim, without more, is not evidence of bad faith."). Thus, Royal Ridge cannot rely on State Farm's delay in surviving summary judgment.

The Court also notes that within this argument Royal Ridge appears to argue that there was no reasonable justification for State Farm to decide to repair the roofs rather than replace them. As discussed above, State Farm's engineer opined that the roofs were repairable because the shingles were pliable and easily manipulated and some of Royal Ridge's roofs had been repaired before. The Court concludes that State Farm had a reasonable justification for deciding to repair the shingles rather than replace the roof. Royal Ridge has failed to produce any evidence demonstrating that State Farm followed the recommendation of its engineer in bad faith. Thus, this argument similarly does not survive summary judgment.

### 2. State Farm Had Reasonable Justification for the Conduction of its Investigation

Next, the Court will consider whether there is any indication that State Farm's investigation demonstrated a lack of good faith. Royal Ridge relies on the fact that State Farm took twenty

9

months to send an engineer to inspect all twenty-three roofs, found additional damage at each inspection, and took two years to determine there was a reasonably comparable shingle available. As to the fact that it took twenty months to send an engineer, Royal Ridge has not demonstrated that this was done in bad faith. There is no indication that an engineer is required to look at all of the roofs.[4] State Farm immediately hired an engineer to look at three roofs. Thereafter, Mr. St. John, the adjuster assigned to the claim, looked at all the roofs during his investigation that occurred from October 30, 2018 to December 3, 2018. (ECF No. 54-1 at 94). To the extent Royal Ridge complains that Mr. St. John failed to inspect every single slope on every roof, this is accurate but not evidence of bad faith. Mr. St. John explained that he inspected a slope in each direction on every building. (ECF No. 54-1 at 93). If the first slope of a certain direction did not have damage, he would not look at the rest of the slopes of the same direction on that roof for damage. (ECF No. 54-1 at 93–94). For example, if he inspected a front facing slope and found no damage, he would not look at the other front facing slopes of that building's roof. (ECF No. 54-1 at 94). He would move on to the other directional slopes. (ECF No. 54-1 at 94). This means that Mr. St. John did not inspect each slope on every building. (ECF No. 54-1 at 95). However, this process is consistent with what Royal Ridge's own engineer stated was standard during his deposition. Royal Ridge's engineer stated that he only checked two slopes per building, and it would be "unreasonable" to check every slope on every building. (ECF No. 59-2 at 2). Thus, State Farm had its adjuster inspect all of Royal Ridge's buildings in a reasonable manner for the industry—with no sign of a lack of good faith. Additionally, the fact that State Farm found additional damage at each inspection does

---

[4] Royal Ridge also asserts that State Farm acted in bad faith by failing to have an engineer inspect all the roofs for the purpose of identifying wind damage. However, again, Royal Ridge provided no evidence that State Farm was required to send an engineer to inspect the roofs for this purpose. Mr. St. John inspected the roofs for wind damage. (ECF No. 54-1 at 60–61). Moreover, Mr. Gerbick stated that he inspected the buildings for wind damage. (ECF No. 47-2 at 2).

not demonstrate a lack of good faith. In fact, it actually demonstrates good faith. State Farm returned to Royal Ridge after concluding that there was not sufficient damage to require replacement to conduct further investigation on Royal Ridge's request. Instead of sticking to its original estimate, State Farm then modified their estimate accordingly. Royal Ridge points to no evidence of bad faith.

As to Royal Ridge's argument that State Farm failed to identify a reasonably comparable shingle for two years, State Farms argues both that the Court cannot consider this as evidence of bad faith and, even if it could, it had a reasonable justification for its failure. State Farm first argues that the Court cannot consider its failure to identify a reasonably comparable shingle as evidence of bad faith because the "reasonably comparable shingle" requirement is based on the Ohio Administrative code. State Farm points out that Ohio courts have held that the Ohio Administrative Code "does not create a private cause of action for violation of its rules and, therefore, should not be considered as evidence of bad faith." *Price*, 2008 WL 698944, at *5. Royal Ridge asserts that the Court cannot consider the violation as per se evidence of bad faith but can consider it as evidence that State Farm has not acted in good faith. However, the Court concludes that a resolution of this dispute is not necessary. Even assuming the Court can consider the failure to identify a reasonably comparable shingle for two years evidence of a lack of good faith, the Court concludes that State Farm came forward with a reasonable justification for this failure. Mr. St. John explained in depositions that before he wrote his initial estimate in January 2019, he sent a photo of Royal Ridge's shingles into the roofing locator service. The service indicated that Royal Ridge's shingles were "common three-tab shingle[s]" and that "lots of similar shingles exist." (ECF No. 54-14 at 91). However, color could not be determined through photograph. (ECF No. 54-14 at 91). This led Mr. St. John to believe there would not be an issue finding a reasonably

11

comparable shingle. Mr. St. John explained that, once it was determined that "spot repairs"—repairs that would require replacing shingles—would be necessary, he would ask a contractor to supply a shingle in order to determine whether a reasonably comparable shingle was available. (ECF No. 54-14 at 92). State Farm could not make the reasonably determinable comparison until Royal Ridge provided it with a shingle. (ECF No. 54-1 at 116). In August 2019, Royal Ridge indicated that they did not believe there was a reasonably comparable shingle available. However, Royal Ridge did not supply a shingle for comparison.[5]

Once Royal Ridge involved a law firm in February 2020, State Farm sent an engineer to review the property and the engineer removed a shingle and sent it in to determine if a reasonably comparable shingle was available. (ECF No. 47-4 at 5). A reasonably comparable shingle was found, and State Farm asked the engineer to photograph the new shingles next to the old ones. (ECF No. 57-1 at 56). Based on this photograph, the adjuster on the claim determined that it was a reasonably comparable match sometime in June 2020. (ECF No. 57-1 at 62). The Court concludes that State Farm had a reasonable justification in the length of time it took to conclude there was a reasonably comparable shingle. Up until August 2019, Mr. St. John believed there would not be an issue finding a reasonably comparable match based on the information he received from a roofing locator service. Thus, there was a reasonable justification up until that point. Then, in August 2019, Royal Ridge indicated that it believed it would have issues finding a reasonably comparable match. State Farm did not have a shingle from Royal Ridge to send in at that time. State Farm eventually went back to property and took a shingle. Then, in June 2020—ten months

---

[5] Mr. St. John alleges that he requested a shingle in June when he returned to Royal Ridge and Royal Ridge's contractor said he would supply one at a later date when he was actually doing the repair. (ECF No. 54-1 at 131). It appears Royal Ridge disputes this. Taking the facts in the light most favorable to Royal Ridge, the Court will assume that Mr. St. John he did not request a shingle.

after Royal Ridge informed State Farm of the issue—Royal Ridge found a match. There is no evidence that ten months is an unreasonable length of time or that State Farm delayed finding a match in bad faith. The Court, therefore, concludes that Royal Ridge failed to meet its burden. *See Harsh v. GEICO Gen. Ins. Co.*, No. 2:17-CV-00814, 2019 WL 1959491, at *4 (S.D. Ohio May 2, 2019) ("An insurer lacks reasonable justification only when it acts in an arbitrary and capricious manner.").

Additionally, to the extent Royal Ridge argues otherwise, the Court notes that State Farm had a reasonable justification in concluding that a reasonably comparable shingle existed. Two employees of State Farm concluded based on photographs of the new shingle with the old shingles that the shingles were reasonably comparable. Royal Ridge fails to point to any evidence that demonstrates that State Farm made this determination in bad faith or with a lack of good faith. The only evidence Royal Ridge points to is Mr. St. John's statement in his deposition that he did not think the shingle State Farm provided Royal Ridge was a reasonably comparable match. However, the "test . . . is not whether the defendant's conclusion to deny benefits was correct, but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Corbo Props. v. Seneca Ins. Co.*, 771 F. Supp.2d 877, 887 (N.D. Ohio 2011). The engineer and two employees of State Farm believed that the shingles were reasonably comparable. It is undisputed that "reasonably comparable" is a subjective test. There is no indication that this was an arbitrary or capricious decision. The Court concludes that State Farm failed to point to any evidence that indicates State Farm made this decision with a lack of good faith.

      **3.**     **State Farm had a Reasonable Justification for Failing to Pay for Certain Damages**

Finally, Royal Ridge argues that State Farm demonstrated bad faith by failing to pay some of Royal Ridge's damages. Royal Ridge asserts that two years ago Mr. Gerbick found damage on all the fascia, downspouts, and gutters of all of Royal Ridge's buildings. To date, Royal Ridge states that it has not been paid for this damage. State Farm responds that Mr. Gerbick was asked to inspect the roofs only and was not asked to opine on the damage Royal Ridge points to. A review of the deposition testimony confirms this. Mr. Gerbick testified that he noted the damage only to "get a sense of the storm." (ECF No. 53-1 at 89). He did not make a determination on whether the damage was cosmetic or functional. (ECF No. 53-1 at 89). Mr. Gerbick was not sent to Royal Ridge to opine on the fascia, downspouts, or gutters. (ECF No. 53-1 at 90). Thus, State Farm did not include this damage in its estimate because Mr. Gerbick was sent to Royal Ridge only to inspect the roofs and did not give an opinion on this damage. In fact, State Farm revised the estimate to include all of the other damage Mr. Gerbick opined on. (ECF No. 59-5 at 2–3). State Farm, therefore, had a reasonable justification to not pay for these damages—Mr. Gerbick did not provide an actual opinion on this damage and was sent only to look at the roofs. Mr. Gerbick did not even determine whether this damage was functional or merely cosmetic. Royal Ridge points to no evidence that there was some other motive for failing to include the damage in the estimate. Again, Royal Ridge has simply failed to meet their burden.

As noted, "[t]o prevail against a motion for summary judgment in a bad faith claim, an insured must put forth evidence that the claim was denied or unreasonably delayed and the insurer had no justification for such denial or delay." *Price*, 2008 WL 698944, at *5 (citations omitted). Ultimately, Royal Ridge failed to put forth evidence that State Farm had no justification for its denial or its delay. *See Drouard*, 2007 WL 707532, at *3 ("[S]ummary judgment is properly granted in an insurer's favor where the record is devoid of evidence tending to show a lack of good

14

faith on the part of this insurer."). Accordingly, the Court concludes that summary judgment is appropriate.

### C. Punitive Damages

State Farm additionally argues that Royal Ridge is not entitled to punitive damages under its lack of good faith claim. Because the Court grants summary judgment to State Farm on this claim, the Court need not address this argument.

### V. Conclusion

For these reasons, the Court GRANTS summary judgment to State Farm on Royal Ridge's claim for attorney's fees under its breach of contract claim and Royal Ridge's lack of good faith claim. Because there is one claim remaining—not disputed in this motion—the case is not dismissed in its entirety.

IT IS SO ORDERED.

Dated: August 16, 2022

*s/ Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE